# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1906.

---

## ELLIOTT et al. v. KANSAS CITY, Appellant.

### Division Two, October 17, 1906.

1. **WITNESS: Incompetent: Waiver: How Shown: Bill of Exceptions.** Where counsel informs the court that the witness at a former trial in the same cause testified without objection, and that announcement is not controverted by the counsel of the adverse party, it is not necessary, in order to preserve the point that the witness's incompetency in the former trial had been waived, that it be shown to the court by the bill of exceptions that the witness had in such former trial testified without objection.

2. ———: **Physician: Waiver: Recall.** The incompetency of a physician to testify against a litigant who had been his physician having been once waived, the waiver cannot be recalled. Where the witness testified in one trial of the same cause without objection, his testimony concerning the same matters cannot be excluded upon a subsequent retrial on the ground that it relates to information he had obtained while treating the objector as a physician. And the rule must be the same where the party who now objects to the witness's testifying, at the former trial called the witness in his own behalf.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

REVERSED AND REMANDED.

*Edwin C. Meservey* and *W. H. H. Piatt* for appellant.

(1) Plaintiff's instructions 1 and 2 are not supported by the evidence. They assume as a fact proven a fact which is in controversy, and are erroneous. Thompson v. Botts, 8 Mo. 710; Comer v. Taylor, 82 Mo. 347; Siegrist v. Arnot, 10 Mo. App. 209; Dowling v. Allen & Co., 88 Mo. 296; Bank of North America v. Crandall, 87 Mo. 212; Kenney v. Railroad, 74 Mo. App.

310. It is error to give ambiguous, misleading, conflicting, confusing, or unintelligible instructions. Klamp v. Rodewall, 19 Mo. 450; Frank v. Railroad, 57 Mo. App. 181; Dunn v. Dunnaker, 87 Mo. 597; Crole v. Thomas, 17 Mo. 329. (2) It is error for experts to give opinions based upon the history of the case as they learn it from plaintiff, or from each other in diagnosing the case. Holloway v. Kansas City, 184 Mo. 19; People v. Murphy, 101 N. Y. 130; Davidson v. Connell, 132 N. Y. 238; Railroad v. Shires, 108 Ill. 630; Heald v. Thing, 45 Me. 395; Railroad v. Frazier, 27 Kan. 463; U. S. v. Falkner, 35 Fed. 730; Weatherbee v. Weatherbee, 38 Vt. 454; Greenleaf on Evidence (13 Ed.), sec. 440; Rogers on Expert Testimony (2 Ed.), secs. 46, 116; Lawson on Expert and Opinion Evidence (2 Ed.), 176. (3) It is not competent for experts to draw conclusions of facts from the evidence of the case. That is what the plaintiffs' experts did in this case, and it is error. Glasgow v. Railroad (Mo.), 89 S. W. 915. (4) The plaintiff waived her right to object to the testimony of Dr. J. A. Horrigan on the ground of privileged communication under section 4659, Revised Statutes 1899, for two reasons: 1st. Because on direct examination she testified that she had never had any trouble with her back. 2nd. The statute does not confer upon plaintiff the right to forbid the repetition of the doctor's testimony, it having been once given with her consent. The right having been once waived ceased to exist. R. S. 1899, sec. 4659; McKinney v. Railroad, 104 N. Y. 352; Holloway v. Kansas City, supra; Borgess Inv. Co. v. Vette, 142 Mo. 571; Keller v. Ins. Co., 95 Mo. App. 637; Morris v. Railroad, 148 N. Y. 92. The New York statute with respect to privileged communications is the source of and practically the same as the Missouri statute. Holloway v. Kansas City, 184 Mo. 41. It was held under the New York statutes: "That where a physician, incompetent under the stat-

ute, testified at the instance of his patient upon one
trial the party so calling him could not insist upon his
exclusion as a witness to the same facts at the subse-
quent trial of that cause.'' Eddington v. Ins. Co., 77
N. Y. 564; Ess v. Griffith, 139 Mo. 322; Green v. Crapo
(Mass.), 62 N. E. 959; McKinney v. Railroad, 104 N.
Y. 352; Rapalje on Witnesses,. sec. 178; 30 Am. and
Eng. Ency. Law (72 Ed.), 1061; Tierney v. Hannon, 81
Mo. App. 488; Corning v. Walker, 100 N. Y. 547; Blair
v. Frischkorn, 151 Pa. St. 466.

*L. A. Laughlin* for respondents.

(1) Defendant criticises instruction 1 for plain-
tiff and says that it assumes that the plaintiff was
thrown down and injured. Defendant then quotes from
the evidence to show that she was not thrown down.
While plaintiff testified that she was thrown down and
other witnesses testified her back was bruised and she
has suffered pain and has never been able to walk since,
which is some evidence that she was injured at the time,
still, there is a more complete answer than that to the
objection, that is, that the instruction assumes nothing
of the kind.    Defendant misstates instruction 2 for
plaintiff. The instruction tells the jury that the plain-
tiff ''had the right to assume that she could use the side-
walk on which she alleges she was walking when she
fell, with safety,'' etc. This instruction has received the
approval of this court. Perrette v. Kansas City, 162 Mo.
238. (2) Defendant next complains that the experts
were permitted to give opinions based upon the history
of the case as they learned it from the plaintiff. A read-
ing of the record quoted in the brief will show that there
was no question asked by plaintiff's counsel which
called for an opinion based upon the history of the case
not appearing in evidence and that there was no objec-
tion by defendant's counsel based upon that ground.
The improper question and the proper objection were
both in the record in the case of Holloway v. Kansas

City, 184 Mo. 19, as well as in the case of Glasgow v. Railroad, upon which defendant relies. It is useless to discuss a proposition of law when there are no facts in the record which raise the question. (3) Defendant next complains that the experts of plaintiff were permitted to draw conclusions of facts from the evidence in the case. Defendant does not point out a single objection of this kind in the record. As a matter of fact, there is no such objection in the record. An assignment of error that fails to point out specifically the ruling to which objection is made and to state the ruling and the manner in which it occurred so that it can be understood by the court without entering upon an exploration of the record is insufficient. Schultz v. Moon, 33 Mo. App. 329; Hamilton v. Crowe, 175 Mo. 634; Joy v. Manion, 28 Mo. App. 55; Green v. Wright, 36 Mo. App. 298; McGarry v. Railroad, 36 Mo. App. 340; Honeycut v. Railroad, 40 Mo. App. 674; Scarritt Furniture Co. v. Moser, 48 Mo. App. 543; Holten-Warren Lumber Co. v. Miller, 64 Mo. App. 620. (4) The last error assigned by defendant is that the court erred in excluding the testimony of Dr. Horrigan. In order to confuse or mislead the court, defendant makes certain claims about this testimony which are not borne out by the record. The record shows that this witness was called by the defendant. He proceeded to testify that in March, 1893, he attended the plaintiff in a professional capacity. When asked the occasion of his going to see her, the condition he found her in and what he did, plaintiff objected to the testimony on the ground it was privileged. This objection was sustained and defendant excepted. Defendant then made an offer of what the witness would testify to. It will be seen that there is no admission by plaintiff as to the testimony of the witness on former trials and no evidence introduced as to the evidence he gave on former trials. Though the re-

mark of the court that the witness had testified to sub-
stantially these facts at two former trials may be held
as binding upon the plaintiff, certainly the assertion of
defendant's counsel that the witness testified without
objection at two former trials cannot be so regarded.
The utmost that can be claimed from the record is that
it shows that the witness testified on two former trials
to substantially the facts defendant offered to prove
by him at this trial. Whether he testified for the plain-
tiff or defendant or against the objection of plaintiff
or was cross-examined by plaintiff's counsel does not
appear. In order to make a showing counsel for de-
fendant have printed in their statement what purports
to be a transcript of the testimony of the witness given
on the second trial. It does not require any citation of
authorities to convince this court that a record for an
appellate court cannot be pieced out in this manner.
In the present state of the record there is absolutely
nothing on which to base the objection made by defend-
ant. But inasmuch as the defendant has traveled out-
side of the record and has made up one of its own in
order to bolster up its objection, it is only proper to
say that the facts as shown by the supplementary rec-
ord of defendant and the assertions of its counsel do
not bring this case within the rule laid down by the au-
thorities they cite. They assert that Dr. Horrigan tes-
tified on two former trials for the defendant without
objection by plaintiff and was cross-examined by plain-
tiff's counsel. There are but three cases cited by de-
fendant which relate to the waiver of privilege by a
patient to the testimony of a physician. In McKinney
v. Railroad, 104 N. Y. 354, a physician was called as a
witness by the plaintiff on the first trial. On the sec-
ond trial the physician was called as a witness by de-
fendant and it was held that by calling the physician
as a witness on the first trial plaintiff had waived the
privilege. In Morris v. Railroad, 148 N. Y. 88, plain-

tiff called two physicians to attend her at the time of the accident. She called one physician as a witness. The other was offered by defendant and it was held that having offered one witness to the facts plaintiff had waived her privilege to object to another witness to the same facts. In both these cases the plaintiff first offered the physician as a witness. The only case which resembles the facts in the case at bar as they are claimed to exist by defendant is Schlotter v. Brooklyn & New York Ferry Co., 85 N. Y. Supp. 847. There one of the Supreme Courts of New York held that where a defendant called the physician on the first trial and he testified without objection and was cross-examined by plaintiff the privilege was waived and the evidence of the physician could not be objected to on the second trial. This decision is opposed to that of the New York Court of Appeals in Grattan v. Ins. Co., 92 N. Y. 287. In that case the physician testified on the first trial and on the second trial was called by the defendant and his evidence was excluded. It was proposed to show that the plaintiff's counsel had examined the physician on the first trial in regard to the privileged matter. The statutes of Iowa and New York with respect to privileged communications are in all essentials like the Missouri statute. Holloway v. Kansas City, 184 Mo. 45. The Supreme Court of Iowa takes the opposite view of the statute from the New York Court of Appeals. Burgess v. Sims Drug Co., 114 Iowa 275. The statute of Michigan is similar to the Missouri statute and the Supreme Court of that State takes the same view as the Iowa courts do. Briesenmeister v. Supreme Lodge K. of P., 81 Mich. 535. If all the evidence given by Dr. Horrigan on former trials had been introduced on this trial, it would be seen that there was in fact no waiver with full knowledge on the part of plaintiff of all the facts.

FOX, J.—This cause is here upon appeal by the defendant from a judgment of the Lafayette Circuit Court for the sum of $8,000. This is an action for $25,000 damages by respondent against the appellant for personal injuries alleged to have been sustained by her by reason of stepping into a hole in one of the sidewalks in said city. The defense was a general denial and contributory negligence. Two trials of this case were had in Kansas City, at the first of which the jury disagreed, and at the second plaintiff recovered a verdict of $500. The case was before Division No. 2, at the April Term, 1903, of this court, on writ of error taken by plaintiff, and the judgment was by this court reversed and remanded on account of an erroneous instruction given for defendant. Plaintiff took a change of venue and a third trial of the case was had in Lafayette county, Missouri.

Plaintiff in her petition alleges that on the evening of the 27th of August, 1898, while walking upon a plank sidewalk of defendant, on the east side of Central street, at a point about twenty-five feet north of Nineteenth street, she stepped into a hole in said sidewalk, skinning and bruising her right leg, wrenching her hip, injuring her back, causing a concussion of her spine and a severe nervous shock, which resulted in chronic neutritus, so that her lower limbs were contracted and drawn out of shape, thereby permanently injuring her in the sum of $25,000. The plaintiffs are husband and wife. At the time of the accident she was about twenty-eight years old. In August, 1898, they were living at 4020 Woodland avenue in Kansas City.

On the morning of August 27, 1898, Mrs. Elliott left her home and went down town to the home of her sister, Mrs. O'Hare, who lived at the corner of Sixteenth street and Baltimore avenue. After lunch she went to the home of a friend, Mrs. G. J. Pierce, who lived at 311 West Twentieth street. About dusk she

left the home of Mrs. Pierce to return to her sister's house. She walked east on Twentieth street to Central street and then turned north.. Central street runs north and south and is intersected at right angles by numerically numbered streets, the lowest numbers being at the north end. Mrs. Elliott walked on the east side of Central street as she went north. There was a plank sidewalk on the east side of Central street between Eighteenth and Nineteenth streets, which was built in 1890 under a city ordinance. This sidewalk consisted of wooden stringers about twelve feet long across which were nailed planks. At a point about twenty-five feet north of Nineteenth street a plank was missing out of the sidewalk and the dirt had washed out underneath the stringers at a place where two stringers met, causing the sidewalk to sag. Mrs. Elliott stepped into this hole with her right foot, which went down at least as far as her knee, for her leg was skinned that far up. She got out of the hole and. went on to her sister's house, a distance of three or four blocks. Here she got a package and went one block further on and took a street car for home. On the car pains came on in her leg and back so that when the car reached its terminus at Thirty-eighth street and Woodland avenue she could hardly walk to her home about two blocks distant. When she got home she went to bed.

We deem it unnecessary in the determination of the legal propositions involved in this proceeding to detail all the testimony introduced by plaintiffs and defendant upon the trial. It is sufficient to say that there was testimony on both sides upon the issues presented by the pleadings. There was testimony on the part of the plaintiff tending to show that her injuries were of a very severe and permanent character and were the result of the negligence of the defendant in not keeping its sidewalk in a reasonably safe condition. There was also testimony on the part of the plaintiff that the

condition of this sidewalk had existed for sometime prior to the accident. On the part of the defendant there was evidence tending to show that plaintiff's injuries were slight and not of a severe character and by no means permanent and also evidence that her condition at the time of the trial and as testified to by the witnesses was not the result of the accident but was the result of a diseased condition of the plaintiff, Mollie Elliott, which was in existence prior to the accident.

The question of the admission and rejection of evidence during the progress of the trial, as well as the challenge of appellant to the correctness of instructions given by the court, will be given attention during the course of the opinion. As before stated, the nature and character of the testimony as to the nature and character of the injuries received, as well as the results of such injuries, and as to what occasioned them, is conflicting, and it can serve no good purpose to reproduce in detail all of such testimony.

At the close of the testimony the court instructed the jury, and the cause was submitted to them upon the evidence and instructions, and their verdict was in favor of the plaintiff, assessing plaintiff's damages in the sum of $8,000. Motions for new trial and in arrest of judgment were timely filed and by the court overruled, and judgment was rendered in accordance with the verdict. From this judgment the defendant in due time and proper form prosecuted this appeal and the record is now before us for consideration.

OPINION.

The record before us discloses the assignment of numerous errors as grounds for the reversal of the judgment in this cause. We will give the complaints of appellants such attention and consideration as the importance of them may suggest.

The most serious proposition with which we are confronted upon this appeal is the exclusion of the testimony of Dr. Joseph A. Horrigan, which was offered by the defendant upon the trial of this cause. There is a controversy between counsel upon the preliminary question as to whether or not the question of the exclusion of this testimony is properly preserved by the record so as to warrant this court in reviewing the action of the trial court upon that question; therefore, it is essential first to determine this preliminary question.

Dr. Horrigan, upon the second trial of this cause in the Jackson Circuit Court, was introduced as a witness by the defendant and testified in such cause. That he did give testimony in the former trial there can be no dispute. The record in this cause shows that the trial court admitted that he had testified to substantially the same facts as were offered to be shown by the defendant in the two former trials, and the record of this court furnishes conclusive evidence that he did so testify; however, it is insisted by respondent that it does not sufficiently appear from the record of this cause that he testified in such former trial without objections on the part of the plaintiff so as to warrant the court in passing upon the question of waiver which is urged by appellant. To fully appreciate this question it is essential to reproduce precisely what the record shows upon this preliminary question. Dr. Horrigan was introduced as a witness upon this trial by the defendant and the following examination was made, which fully discloses the true state of the record:

"Q. Where do you live? A. 3100 Main street, Kansas City, Mo.

"Q. Are you a practicing physician and surgeon in Kansas City? A. Yes, sir.

"Q. How long have you been practicing there? A. Sixteen years.

"Q. Have you practiced elsewhere? A. I was

four years in the Columbian Hospital before I came to Kansas City.

"Q. At what colleges did you acquire your medical education? A. Columbian Hospital at Washington.

"Q. In 1893, Doctor, in March, state whether or not you attended in your professional capacity the plaintiff in this case, who was then Mrs. John O'Hare? A. I did.

"Q. Where was she living at that time? A. At 1508 Main street.

"Q. Now just tell the jury the occasion of your going there to see her and what condition you found her in when you got there, and what you did?

"Mr. Laughlin, counsel for the plaintiff: I want to ask the doctor some questions on this point in regard to the identification.

"By Mr. Laughlin: Q. You testified on the first trial of this case did you not? A. Yes, sir.

"Q. Did you not testify upon that trial you attended a woman there having light brown hair and eyes? A. I testified something about the hair. It has been so long ago I do not remember just what.

"Court: You cannot go into an examination of this kind now. You can do that on cross-examination.

"Mr. Laughlin, counsel for the plaintiff: The plaintiff objects to the question for the reason that it calls for information obtained by the witness in his professional capacity in order to treat the patient, which information was necessary for the witness to treat the patient.

"Court: Objections are sustained.

"To which ruling of the court the defendant by its counsel then and there duly excepted.

"Mr. Howell, counsel for the defendant: The defendant by its counsel offers to prove by the witness, Dr. Horrigan, that in March, 1893, said Horrigan visited the plaintiff at her home at 1508 Main street in

Kansas City, Missouri, that the witness found the plaintiff at that time suffering from an acute case of pelvic peritonitis, that the inflammation had extended throughout the pelvic parts involving the organ around the source or origin of the sciatic nerve. That there were evidences that there had been just prior to his visit a rupture of a pus sac in the ovaries, that the plaintiff was suffering such pain that it was necessary to administer chloroform to allay it, that the pelvic part or uterus and vagina were so inflamed that it was deemed by witness unsafe to make a digital examination of these parts, that the witness visited the plaintiff during this sickness four or five times and treated her for this condition.

"Court: It is admitted that the same witness testified to substantially these facts at the two previous trials of this case had in Kansas City, Missouri, and that his evidence in the last trial of said cause is preserved in the bill of exceptions.

"Mr. Howell, counsel for the defendant: This witness testified at the two former trials without objection.

"Mr. Laughlin, counsel for the plaintiff: We make the same objection to the offer to prove as to the last above question objected to.

"Court: The offer to prove is rejected and the objections of plaintiff's counsel sustained.

"To which ruling of the court the defendant by its counsel then and there duly excepted."

We are of the opinion that the contentions of respondent that the foregoing examination and offer of the testimony of Dr. Horrigan do not sufficiently preserve the question so as to authorize this court to pass upon the question of waiver, cannot be maintained. In our opinion this record sufficiently discloses that Dr. Horrigan testified at the two trials of this cause without objections, and that the trial court in

passing upon the admissibility of the doctor's testimony did so with the full recognition that he had testified at a former trial without any objections on the part of the plaintiff. It is clear from this record that the trial court did not exclude Dr. Horrigan's testimony on the ground that defendant's counsel had not offered the bill of exceptions and record in evidence showing that he had testified without objections, but the action of the court was manifestly based upon the theory that the testimony, even though no objections were made to his testifying in the former trial, was inadmissible in the trial of this cause. It was admitted by the court that this same witness testified to substantially the same facts at the two previous trials of this cause as were offered in proof by the defendant upon the present trial. That the court might not be mislead, counsel for the defendant, before the final ruling was made, informed the court that the testimony of this witness upon the former trial was given without any objections on the part of the plaintiffs. It will be observed that counsel for respondent, Mr. Laughlin, did not controvert the statement of the counsel for the defendant, that the witness had so testified without objections, but simply contented himself with making the same objections to the offer to prove that he had made when the testimony was first offered. The court then made its final ruling and excluded the testimony, to which ruling of the court the defendant by its counsel then and there duly excepted.

While this court has uniformly adhered strictly to the rules of practice which require all questions for review to be seasonably preserved by the record, however, it is unwilling to adopt the extreme view urged by counsel for respondent upon this question, where it so clearly appears that the counsel for defendant, who is an officer of the court, fully informed the court, prior to its final ruling, that the record discloses no ob-

jection to the testimony of this witness upon the former trial; and the record does not disclose that the truth of this statement by counsel was controverted either by the court or the counsel for the plaintiff. We are unwilling to take the extreme view that it was essential that counsel for defendant, in order to preserve this point, should have exhibited to the court and had it incorporated in the record the bill of exceptions showing that this witness had testified upon a former trial without objections. Under the disclosures of this record counsel for defendant had the right to assume that the court took it for granted that he was telling the truth when he stated that the witness had testified upon the former trial without objections, and passed upon the question fully recognizing that fact.

This brings us to the consideration of the most vital proposition presented by this record, that is, was the action of the trial court in excluding the testimony of Dr. Horrigan, error, and if so was it such error as would warrant this court in reversing the cause?

It is conceded that Dr. Horrigan, the witness introduced by defendant, had, previous to this accident, attended the plaintiff, Mrs. Elliott, as her physician. The record discloses that there had been two former trials of this cause; the first trial resulted in a disagreement of the jury and they were discharged; the second trial resulted in a judgment for the plaintiff for the sum of five hundred dollars. From that judgment plaintiff appealed and the cause was reversed and remanded for error committed in the giving of an erroneous instruction. [See 174 Mo. 554.]

The record discloses that Dr. Horrigan testified upon both of such former trials as to his treatment of the plaintiff, Mrs. Mollie Elliott, prior to this accident, and that this testimony was given by him without any objections upon the part of the plaintiffs; therefore the

crucial question upon this proposition may thus be briefly stated: Dr. Horrigan having testified in the previous trials without any objections on the part of the plaintiffs, to substantially the same facts as were offered to be shown by him in the present trial, did the plaintiff, Mrs. Mollie Elliott, waive her right to forbid the repetition of the doctor's testimony in the present trial, it having been once given with her consent? In other words, by reason of the consent to the doctor testifying upon the former trials, has she waived her right or privilege conferred by the statute, section 4657, Revised Statutes 1899?

Upon this proposition the expressions by the courts having the question in judgment before them is almost uniform that the purpose sought by the prohibition contained in the statute against disclosing professional information, is for the purpose of allowing greater freedom between physician and patient, and was enacted as a matter of public policy to confer upon persons seeking the services of a physician, a personal privilege, and closing the door to the sick room and of preventing his publishing to the world their infirmities. That this personal privilege may be waived all the authorities agree. It is equally well settled, as was said in Fox v. Turnpike Co., 59 N. Y. App. Div. l. c. 369, that "when a patient voluntarily opens the door of the consultation room and gives a view that may have been specially arranged for the purpose, it would not be in accordance with the spirit of the statute or the interest of truth to shut the door against a view to be described by the physician." In Morris v. Railroad, 148 N. Y. l. c. 92, 93, the proposition involved in this proceeding was in judgment before that court. The principal was announced in that case that a plaintiff could not sever her privilege, waiving it in part and retaining it in part. It was there expressly ruled that "when she waived it, it ceased to exist, not partly but

entirely. . . . Having once consented to and acquiesced in the complete uncovering and making public what before was private and confidential, the seal of confidence is removed entirely and the waiver cannot be recalled. . . . The information is open to the public and the patient is no longer privileged to forbid its repetition. A waiver once made is general and not special, and its effect cannot be properly limited to a particular purpose or a particular person. . . . After the information has once been made public no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect, by its repetition at another time or by another person."

In McKinney v. Railroad, 104 N. Y. 352, the reasons for the application of the doctrine of waiver of a personal privilege were very clearly announced. The court in discussing the proposition used this language: "It is claimed by the appellant that the ban of secrecy having once been removed by the patient, and the information having lawfully been made public, the right to object further thereto has not been conferred. There seems much reason in this claim. The patient can not use this privilege both as a sword and a shield, to waive when it inures to her advantage, and wield when it does not. After its publication no further injury can be inflicted upon the rights and interests, which the statute was intended to protect, and there is no further reason for its enforcement. The nature of the information is of such a character that when once divulged in legal proceedings, it cannot be again hidden or concealed. It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute. The consent having been once given and acted upon cannot be recalled, and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect. The stringency with

which the rule excluding privileged communications is applied by this court is illustrated in the recent case of Renihan v. Dennin, 103 N. Y. 573, but there is no principle or authority for holding, after a consent to publish such information has been properly given, and the evil, if any, consummated, that the privileged person can again raise the objection. The object of the statute having been voluntarily defeated by the party for whose benefit it was enacted, there can be no reason for its continued enforcement in such case."

In Schlotterer v. Brooklyn & N. Y. Ferry Co., 85 N. Y. Supp. 847, the facts upon which the propositions involved in that case were predicated were strikingly similar to the facts involved in the case at bar. In that case Dr. Daley was called as a witness in behalf of the defendant. There was no objection made on the ground of his being disqualified to disclose any privileged information, and subsequently he was called as a witness between the same plaintiff and against the same defendant, to recover damages for injuries due to the same accident. Dr. Daley was again called as a witness by the defendant. The plaintiff interposed an objection under the provisions of the code of the State of New York, which are similar to the provisions of the statute upon that subject in this State. The trial court sustained plaintiff's objection, to which action of the court defendant duly preserved its exceptions. The action of the trial court was reversed and the Supreme Court, in discussing the action of the lower court, said: "I think that McKinney v. Railroad, 104 N. Y. 352, is authority against the ruling, unless the amendments to section 836 of the Code of Civil Procedure made subsequent to that judgment make it inapplicable. Since 1885, when judgment was entered in McKinney's case, two pertinent amendments have been made. Chapter 381, p. 736, of the Laws of 1891, provided that the ex-

press waiver of privilege must be 'upon the trial or examination.' Chapter 53, p. 69, of the Laws of 1899, provides that such waiver must be 'in open court on the trial of the action or proceeding.' The able and learned counsel for the respondent insists that the statute now requires that the waiver must be made upon the particular trial under review, to the effect that, even though upon a former trial the patient had expressly waived the privilege, he could, mauger such waiver, assert his privilege upon any subsequent trial. The letter of the statute does not require a construction which is opposed to the reason of the rule as laid down in McKinney's case, supra. The purpose of the statute is to cover the relation of physician and patient with the cloak of confidence. But the purpose is to save the patient from possible humiliation or distress, not to enable him to win a lawsuit. Now, if the patient once permit the physician to testify, there is no longer any reason at any time for excluding competent testimony under the plea of public policy. If the patient once voluntarily renounces the protection of the statute, his waiver is everlasting and irrevocable. I think, then, that the purpose of the amendment was not to limit the continuous force of a waiver, and thus, to adopt the figure of RUGER, C. J., in McKinney's Case, to permit the patient to use the statute once as a shield and anon as a sword, but by way of further assurance that the wavier had been formally, clearly and certainly made. . . . In my opinion, the language of the statute does not authorize a construction which affords the privilege notwithstanding the reason for its continuance has ceased to exist. It simply means that, when the waiver is made, it must be made in open court on a trial of the action. It thus affords a safeguard that the waiver was duly made, but not a shift of the waiver, once made."

In Lissak v. Crocker Estate Co., 119 Cal. 442, the

Supreme Court of that State, in discussing the doctrine of waiver of a privilege conferred by the code, which provides that "a licensed physician or surgeon cannot, without the consent of his patient, be examined in any civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient," said: "When Dr. Spencer was called as a witness the plaintiff had the right to object to his testifying upon the matters named in this section, or he could consent to his being examined in reference thereto. The privilege given by the statute is personal to the patient, and may be waived by him. It is waived when he calls the physician himself as a witness, or when he permits him to give his testimony without making any objection thereto. If the patient once consents to his testifying, he cannot, after the testimony has been given, revoke the consent and ask to have it excluded. Such consent may be either implied or express, and there was in the present instance an implied consent when the plaintiff permitted the witness to be examined in full by the defendant without any objection."

In Green v. Crapo, 62 N. E. (Mass.) l. c. 959, the Supreme Judicial Court of Massachusetts, in discussing the admission of a privileged communication between counsel and client, thus stated its views upon that proposition: "Of course the appellant's communications with him while he was her counsel were privileged, but they were unimportant and it appeared that the privilege was waived in the probate court. Nevertheless, the objection was urged when the case came to be tried before the justice of this court, and an exception was taken when he ruled that the privilege having been waived could not be insisted upon before him. We do not think it necessary to remark upon the willingness to hold back this testimony. We content ourselves with saying that

the ruling was right. The privacy for the sake of which the privilege was created was gone by the appellant's own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice.''

In Borgess Inv. Co. v. Vette, 142 Mo. 560, this court, in discussing the question of waiver, used this language: ''It is said in Tomlinson v. Ellison, 104 Mo. 114: 'The fact that plaintiff had taken defendant's deposition in the same action amounted to a waiver of any alleged incompetency on his part.' While it was said in Ess v. Griffith, 139 Mo. 322, that 'the statement of the legal principle quoted was. not necessary to a decision of the case, and can only be regarded as the *dictum* of the judge who wrote the opinion,' it was ruled that where the deposition of a party to a suit, who was at the time incompetent to testify as a witness in his own behalf, was taken by the adverse-party, the question of his incompetency was by reason thereof waived, and that he then became a competent witness in his own behalf in the trial of the cause, whether the deposition was read on the trial or not. It was said: 'Plaintiff had the right to examine defendant Pierce as a witness, but in doing so. he waived the right to insist on excluding him when called by defendant. This would certainly be so as to all matters concerning which he was examined by plaintiff. He can not, in fairness, be allowed to assert his competency, if his evidence is found to be favorable, and deny it if found to be unfavorable.' [In re Estate of Soulard, 141 Mo. 642.] 'A waiver of objection to competency made at one stage of the taking of testimony is a waiver during the whole progress of that proceeding.' [Rap., Wit., sec. 178, and authorities cited in Ess case, supra.] It would seem from these authorities and upon principle as well, that when plaintiff took the deposition of Vette and

filed it in the cause, it thereby waived his incompetency as a witness for all purposes, whether the deposition was read upon the trial or not."

In Keller v. Home Life Ins. Co., 95 Mo. App. 627, in discussing this proposition, BARCLAY, J., speaking for the court, very clearly and correctly announced the rule applicable to this question. He said: "We discern no reason of public policy to forbid a waiver (by the patient himself) of the professional secrecy imposed upon the physician, by our statute, for the benefit of the patient. . . . The general rule is that a party may waive for himself, at least, a right or privilege conferred by the law for his benefit where such waiver does not conflict with any principle of public policy." During the course of the opinion in the case last cited it was also stated as applicable to the proposition in judgment before the court in that case, that to enforce the rule applicable to the doctrine of waiver would be promotive of fair dealing and the development of the truth concerning the creation and discharge of the contract, which was one of insurance, involved in that proceeding, and that no public policy appears to be adverse to enforcing such a waiver.

There is some conflict in the adjudications upon this proposition but the greater weight of authority is in harmony with the principle announced in the authorities heretofore cited. We shall not undertake to reconcile such conflict. In our opinion the principle applicable to this proposition, as announced in the New York case, is sound, and the reasons assigned for the announcement of the doctrine are equally so. It is insisted by learned counsel for respondent that this principle is not applicable to the case at bar, for the reason that in the former trials the plaintiff did not introduce the physician, and therefore this rule is inapplicable. It is sufficient to say of that contention that the purpose of judicial investigation is and should be

to ascertain the truth surrounding the transaction to be judically determined, and we are unable to make any distinction as to the application of the doctrine of waiver, where the patient herself opens the door to the sick room, and where she consents and acquiesces in someone else opening such door. In principle there is no difference. We have in this case Dr. Horrigan testifying upon two former trials without any objections on the part of the plaintiffs; his testimony could have only been introduced with her consent and acquiescence and the presumption must be indulged, having made no objections to his testimony, in the former trials, and having testified without any objections, that such testimony was given with her full consent and acquiescence. Dr. Horrigan having testified in the former trials without any objections, the reason for the enforcement of the rule in respect to the privilege conferred by the statute, ceased to exist, and while this court has uniformly granted this personal privilege when timely invoked, we are unwilling to approve of the action of the trial court where such personal privilege has been so clearly waived in excluding relevant testimony, where such action can in no way tend to accomplish the purpose sought to be accomplished by the act conferring such personal privilege. It was error to exclude the testimony of Dr. Horrigan, and that such error was prejudicial to the rights of the defendant there can be no question. The issue as to the nature, character and permanency of the injuries received by Mrs. Elliott was sharply presented in this trial, and the testimony of this witness was clearly relevant upon that issue and it constitutes reversible error to have excluded it.

It is next insisted that the court improperly declared the law in instructions numbers 1 and 2 given at the request of the plaintiffs. The instructions complained of are as follows:

"1. The court instructs the jury that if they find

from the evidence that on the 27th day of August, 1898, Central street was a public street of Kansas City; that on the said day there was a hole in the sidewalk on the east side of said street, between Eighteenth and Nineteenth streets, at a point about twenty-five feet north of Nineteenth street, which made said sidewalk not in a reasonably safe condition for persons traveling over it; that said hole was known to the officers of Kansas City having supervision of its sidewalks, or could have been known to them if they had used ordinary care and diligence in the discharge of their duties in time to have repaired the same before said day; that on said day plaintiff Mollie Elliott, while in the exercise of ordinary care, as defined in other instructions, was traveling over said sidewalk, and stepped into said hole, and was thereby thrown down and injured, then your verdict should be for the plaintiff.

"2. The court instructs the jury that the plaintiff Mollie Elliott had the right to assume that she could use the sidewalk on which she alleges she was walking when she fell with safety, using such care as an ordinarily prudent person would exercise under like circumstances, and though she may have known the sidewalk was defective, yet this fact alone would not prevent her from recovering in this action, but should be taken into consideration by the jury with other facts and circumstances in evidence as to whether she was exercising ordinary care as above defined."

It is insisted that instruction numbered 1 for plaintiffs assumed the fact that plaintiff was thrown down and injured and that the jury were not required to find such facts from the evidence in the case. We are of the opinion that the instruction is not subject to the criticism suggested by counsel for appellant. It is insisted by appellant that the instruction does not require the jury to find that Mrs. Elliott was thrown down, but simply requires them to find that she stepped

into a hole. That is not a proper analysis of that instruction. The closing part of the instruction requires the jury to find that she "stepped into said hole and was thereby thrown down and injured." Those terms clearly require the jury to find not only that she stepped into the hole, but as well that by stepping into said hole she was thrown down and injured. There was no error in instruction 1.

The complaint directed to instruction numbered 2 is that it assumes that plaintiff, Mrs. Elliott, fell on the sidewalk. This instruction is not open to such criticism. This instruction substantially declares the law in such terms as has repeatedly met the approval of this court. Appellant doubtless misinterprets the terms employed in that instruction. It does not undertake, nor was that its purpose, to require the jury to find that plaintiff fell upon the sidewalk. It simply tells the jury that she had the right to assume that she could use the sidewalk on which she alleges she was walking when she fell, with safety. The terms "on which she alleges she was walking when she fell," were simply inserted in the instruction to designate and point out the sidewalk she had the right to assume that she could use with safety. In other words, in substance it simply says to the jury that plaintiff alleges that she was walking on a certain sidewalk when she fell. "The court instructs you that she had the right to assume that she could use such sidewalk with safety." Instruction numbered 1 required the jury to find that she stepped into the hole and was thereby thrown down, and there was no necessity for requiring the jury to find such fact by instruction numbered 2, and such requirement is not embraced in such instruction, nor is there any assumption that she fell upon the sidewalk. The terms embraced in the instruction simply point out the sidewalk on which she alleges she was walking when she fell, and there was no error in this instruction.

It is finally contended that the questions propounded to the expert witnesses and the opinions given in response to such questions, were not based upon the proper hypothesis, and therefore were erroneous. It will suffice to say as to this contention that the rules of law governing expert testimony, both as to hypothetical questions and opinions in response to such questions, are well settled in this State, and as this cause must be retried the complaints of appellant can be safely guarded against in the retrial of this cause.

We have indicated our views upon the legal propositions presented by this record, which results in the conclusion that for the reasons heretofore pointed out the judgment of the trial court should be reversed and the cause remanded for a new trial in accordance with the views herein expressed, and it is so ordered.

All concur.