## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. O'CONNER.

[No. 20,975. Filed October 30, 1908. Rehearing denied February
23, 1909.]

1. WITNESSES.—*Competency.*—*Physicians.*—*Statutes.*—Section 520
Burns 1908, §497 R. S. 1881, providing that "physicians, as to mat-
ter communicated to them, as such, by patients, in the course of
their professional business, or advice given in such cases" shall
not be "competent witnesses," creates a privilege in favor of
the patient which he may claim or waive. p. 689.
2. EVIDENCE.—*Privileged.*—*Physicians.*—*Waiver.*—By examining a
physician as to privileged matters, the patient waives such privi-
lege. p. 689.

3. EVIDENCE.—*Privileged Communications.—Physicians.—Waiver.*— Where plaintiff's physician testified, at plaintiff's request, concerning plaintiff's condition, the plaintiff waives his right thereafter to object to the testimony of such physician, when called afterwards by defendant to testify as to such condition. p. 690.

4. SAME.— *Intoxication.— Contributory Negligence.—Credibility.— Railroads.*—Evidence of plaintiff's intoxication is admissible, in an action against a railroad company for alleged negligence, on the questions of plaintiff's credibility and contributory negligence. p. 699.

5. TRIAL.— *Instructions.—Unsigned.—Refusal.*—Where defendant's counsel fail to sign tendered instructions, the trial court commits no error in refusing to give them. p. 699.

6. SAME.—*Instructions.—Invited Error.*—Appellant will not be heard to complain of the giving of an alleged erroneous instruction, where it asked that a similar one be given. p. 700.

7. SAME.—*Instructions.—Contributory Negligence.—Evidence.*—An instruction limiting the proof of contributory negligence to a particular character of evidence is erroneous, since such negligence may be established by direct or circumstantial evidence, or both. p. 700.

8. SAME.—*Instructions.—Invasion of Province of Jury.*—An instruction that "the fact, that the plaintiff is deprived of the pleasure and satisfaction in life that only those have who are possessed of a sound body and the full use of all its members," might be considered in assessing damages, if the jury should find for the plaintiff, invades the province of the jury. p. 700.

9. PLEADING.— *Complaint.— Negligence.— Railroads.— Persons on Tracks.*—A complaint for negligence, which shows that plaintiff's injuries were sustained while upon defendant railroad company's right of way where there was no street nor easement gained by the public, is bad, liability in such case being confined solely to wilful injuries. p. 701.

From Johnson Circuit Court; *William E. Deupree,* Judge.

Action by James O'Connor against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment on a verdict for plaintiff for $7,000, defendant appeals. *Reversed.*

*Samuel O. Pickens* and *Owen Pickens,* for appellant.
*George W. Galvin,* for appellee.

MONKS, J.—This action was brought by appellee to recover damages for personal injuries caused by being struck

by appellant's passenger-train running on the track of the Union Railway Company between Washington and Liberty streets in the city of Indianapolis.

The complaint was in three paragraphs, the first and second paragraphs allege that appellee was injured by the negligence of appellant in running said train, the third paragraph charged a wilful injury of appellee. The cause was commenced in the Superior. Court of Marion County, and twice tried in that court, the first trial resulting in a disagreement of the jury.

At the close of the evidence on the second trial of said cause, appellee withdrew from the jury the first and third paragraphs of the complaint, thereby dismissing the same. The jury returned a verdict in favor of appellee, which was set aside and a new trial granted by the court on motion of appellant.

·The venue of the cause was afterward changed, on motion of appellee, to the court below, where the trial resulted in a verdict, and, over a motion for a new trial, judgment in favor of appellee.

The only error assigned calls in question the action of the court in overruling appellant's motion for a new trial.

It appears from the record that appellee was taken from the place where he was injured to St. Vincent's Hospital in Indianapolis, where Dr. John H. Oliver, surgeon of appellant, attended him.

On the first trial of the cause in the Superior Court of Marion County, Doctor Oliver was called and examined as a witness by appellee, and "testified relative to what he learned at the time he was called to see appellee at the hospital," and concerning "the intoxication of appellee at that time."

On the trial in the court below appellant called and examined said Doctor Oliver as a witness. During said examination appellant offered to prove by said witness, in response to a question propounded to him, "that he was called to see

appellee at St. Vincent's Hospital shortly after his injury, and that appellee was at that time in a profound state of intoxication.'' Counsel for the appellee objected to the introduction of said evidence on the ground that the doctor was at the hospital for the purpose of acting in his professional capacity for appellee, and ''therefore, upon our objection, it is a question of privilege with us whether we permit him to testify or not.'' This objection was sustained by the court, and the evidence excluded, to which ruling appellant excepted. This ruling of the court was assigned as a cause for a new trial.

Section 520 Burns 1908, §497 R. S. 1881, provides: ''The following persons shall not be competent witnesses: * * *

Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases.'' It has been held by this court that the statute ''confers a privilege which the patient, for whose benefit the provision is made, may claim or waive. It gives no right to the physician to refuse to testify, and creates no absolute incompetency.'' *Penn Mut. Life Ins. Co.* v. *Wiler* (1885), 100 Ind. 92, 99-100, 50 Am. Rep. 769, and cases cited. See, also, *Towles* v. *McCurdy* (1904), 163 Ind. 12, 14, 15; *Morris* v. *Morris* (1889), 119 Ind. 341, 343, 344. It is said in *Williams* v. *Johnson* (1887), 112 Ind. 273, 275: ''A physician is not permitted to disclose the result of observations or examinations made by him upon the person of his patient, unless with the consent of the latter, or unless the patient in some way waives his privilege.''

This privilege may be waived by the patient or his legal representatives, by examining the physician as a witness concerning said privileged communication. *Morris* v. *Morris, supra: Morris* v. *New York, etc., R. Co.* (1895), 148 N. Y. 88, 42 N. E. 410, 51 Am. St. 675; *In re Will of Coleman* (1888), 111 N. Y. 220, 19 N. E. 71; *Ros-*

*seau* v. *Bleau* (1892), 131 N. Y. 177, 30 N. E. 52, 27 Am.
St. 578; *Thompson* v. *Ish* (1889), 99 Mo. 160, 12 S. W. 510,
17 Am. St. 552, 570, note; *Wheelock* v. *Godfrey* (1893), 100
Cal. 578, 35 Pac. 317; *Sovereign Camp, etc.,* v. *Grandon*
(1902), 64 Neb. 39, 89 N. W. 448; *Ellis* v. *Baird* (1903), 31
Ind. App. 295, 297-298; 10 Ency. Ev., 138-142, 144, 145,
147; 4 Wigmore, Evidence, §§2390, 2391.

When the privilege has once been waived by the patient in
this manner, it cannot be recalled, and the information is
no longer privileged. *McKinney* v. *Grand St. etc.,
Railroad* (1887), 104 N. Y. 352, 10 N. E. 544; *Clif-
ford* v. *Denver, etc., R. Co.* (1907), 188 N. Y. 349, 80
N. E. 1094; *Morris* v. *New York, etc., R. Co., supra; Schlot-
terer* v. *Brooklyn, etc., Ferry Co.* (1903), 89 Hun, App.
Div., 508, 85 N. Y. Supp. 847; *Elliott* v. *City of Kansas City*
(1906), 198 Mo. 593, 96 S. W. 1023, 6 L. R. A. (N. S.) 1082,
8 Am. and Eng. Ann. Cases 653; *Green* v. *Crapo* (1902),
181 Mass. 55, 62 N. E. 956; *Pence* v. *Waugh* (1893), 135
Ind. 143, 153, 154; *Lissak* v. *Crocker Estate Co.* (1897), 119
Cal. 442, 51 Pac. 688; 4 Wigmore, Evidence, §2389, p. 3360,
§§2390, 2391.

In *McKinney* v. *Grand St., etc., Railroad, supra,* the plain-
tiff sued the railway company to recover damages for per-
sonal injuries, and upon the first trial of the action she
called the attending physician, who testified concerning her
physical condition learned by him while attending her, but
upon the second trial, when the same witness was called by
the railway company to testify to the same facts, his evi-
dence, on objection of the plaintiff, was excluded. On appeal
to the court of appeals, that court held that the evidence
should have been received, and that its exclusion was a re-
versible error. The court in discussing the question said
on page 354: "Such evidence is made incompetent at the
option of the patient only, and in case she elects at any
time to remove the seal from the lips of the witness, the
evidence may properly be received. The intent of the

statute, in making such information privileged, is to inspire confidence between patient and physician, to enable the latter to prescribe for and advise the former most advantageously, and remove from the patient's mind any fear that she may be exposed to civil or criminal prosecution, or shame and disgrace, by reason of any disclosures thus made. Therefore, the statute provides that the information acquired by a physician while attending a patient, in his professional capacity, shall not be disclosed unless the patient waives its prohibition. (Code Civ. Pro. [N. Y.], §§834, 836.) It is claimed by appellant that the ban of secrecy having once been removed by the patient, and the information having lawfully been made public, the right to object further thereto has not been conferred.. There seems much reason in this claim. The patient cannot use this privilege both as a sword and a shield, to waive when it enures to her advantage, and wield when it does not. After its publication no further injury can be inflicted upon the rights and interests which the statute was intended to protect, and there is no further reason for its enforcement. The nature of the information is of such a character that when it is once divulged in legal proceedings it cannot be again hidden or concealed. It is then open to the consideration of the entire public, and the privilege of forbidding its repetition is not conferred by the statute. The consent having been once given and acted upon cannot be recalled, and the patient can never be restored to the condition which the statute, from motives of public policy, has sought to protect. The stringency with which the rule excluding privileged communications is applied by this court is illustrated in the recent case of *Renihan* v. *Dennin* [1886], 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770, but there is no principle or authority for holding, after a consent to publish such information has been properly given, and the evil, if any, consummated, that the privileged person can again raise the objection. The object of the statute having been voluntarily defeated by the party for

whose benefit it was enacted, there can be no reason for its continued enforcement in such case.''

In *Clifford* v. *Denver, etc., R. Co., supra, Morris* v. *New York, etc., R. Co., supra, Green* v. *Crapo, supra,* and *Elliott* v. *City of Kansas City, supra,* the case of *McKinney* v. *Grand Street, etc., Railroad, supra,* is cited with approval.

In *Morris* v. *New York, etc., R. Co., supra,* it was held that a plaintiff could not sever her privilege, waiving it in part and retaining it in part; that when she waived the privilege it ceased to exist. Having once consented to and acquiesced in the uncovering and making public what before was private and confidential, said confidence is renounced entirely, and the waiver cannot be recalled. The information is open to the public, and the patient is no longer privileged to forbid its repetition. After the information has been made public by waiver of the patient, no further injury can be inflicted upon such rights and interests of the patient as the statute was intended to protect by the repetition of the information.

*Clifford* v. *Denver, etc., R. Co., supra,* was an action against the railroad company for personal injuries. After issue was joined in said action, plaintiff caused a commission to be issued for the examination, as a witness in her behalf, of the doctor who treated her when she was injured. Interrogatories prepared by her counsel and cross-interrogatories prepared by the counsel for the defendant railroad company were annexed to the commission, which was duly executed and returned. The plaintiff rested her case without reading any part of the testimony of her physician thus taken, but, when the case was with the defendant, its counsel offered the deposition in evidence, and was permitted to read the part thereof which showed that the witness was a physician and surgeon and that he attended the plaintiff for four or five days while she was in the hospital on account of the injury sued for. The rest of the deposition was objected to by plaintiff and excluded as incompetent, be-

cause the witness divulged "facts which he acquired in his professional capacity as a physician to the plaintiff."

On appeal it was held that the trial court erred in excluding said deposition, and the case was reversed for that reason. The court said on page 357: "The object of section 834 is to prevent the disclosure of delicate and confidential matters, which might humiliate the patient in his lifetime and disgrace his memory when dead, so as to enable him to consult a physician in safety, knowing that his lips would be sealed by the law until he, himself, removed the seal. When, however, the patient forces the physician to tell all he knows upon the subject, and thus publishes to the world all that he might have kept secret, he no longer needs the protection of the statute and withdraws himself from the spirit of the prohibition. That is the logical and necessary effect of such an act, and if the legislature had intended to prevent that result we think it would have said so in specific terms. * * * The amendment of 1899 must be read in the light of the object of the statute which was to prevent the disclosure of a patient's secrets against his will, not to interpose an obstacle to the administration of justice by suppressing facts already made public by the patient himself in a legal proceeding. The legislature did not intend to allow a party to cause a record to be made and filed in a public office in which the testimony of his physician, taken at his instance, is set forth at large, stating confidential facts material in a controversy with another party, and then to prevent that evidence from being read before the jury by advancing as his only objection that it would divulge private matters. The language of the section limiting waivers to such as are made in open court on the trial of an action or by the stipulation of the attorneys for the respective parties should be so construed as to promote, not to defeat the purpose of the statute. While there is no doubt that the examination of a witness under a commission cannot be regarded for all purposes as part of the trial, still the taking of testi-

mony to be used as evidence by either party may well be regarded as a part thereof so far as it affects the question now before us. The application for a commission is made in open court, to take evidence to prove or disprove the issue. It is a proceeding authorized by law to compel a witness to give evidence to be used in deciding the case. Although preliminary to the formal trial in point of time, in substance it may be held so much a part of the trial as to comply with the amendment of 1899, passed for the purpose, already pointed out, of preventing waivers by contract made long before the commencement of the action. * * * A voluntary disclosure of the privileged testimony is conclusive evidence of an intention to waive the privilege. The questions could not be answered without making a full disclosure and hence they necessarily show that to have been the intention, which is the essence of a waiver. If the plaintiff could thus, through what may fairly be held to be the stipulation of her attorneys, force the doctor to give evidence and could then object to such evidence being used in the only way authorized by law, she could mock the court and bring ridicule upon its process with impunity. The courts should not permit their remedies to be trifled with, nor at the election of one party and to the injury of the other, turned into a vain and empty ceremony.''

In *Schlotterer* v. *Brooklyn, etc., Ferry Co., supra,* the physician was called by the defendant, and there was no objection to his testifying made by the plaintiff, on the ground of his being disqualified to disclose any privileged communications. Subsequently in an action by the same plaintiff against the same defendant to recover damages for injuries due to the same accident, said physician was again called as a witness by the defendant. The plaintiff interposed an objection on the ground of privileged communication. The objection was sustained by the trial court, and the evidence excluded. This action of the trial court was held erroneous on appeal. The court said on page 509: ''I think that

*McKinney* v. *Grand St. etc., Railroad* [1887], 104 N. Y. 352, 10 N. E. 544, is authority against the ruling, unless the amendments to section 836 of the code of civil procedure, made subsequent to that judgment, make it inapplicable. Since 1885, when judgment was entered in the McKinney case, two pertinent amendments have been made. Chapter 381 of the laws of 1891 provided that the express waiver of privilege must be made 'upon the trial or examination.' Chapter 53 of the laws of 1899 provides that such waiver must be made 'in open court on the trial of the action or proceeding.' The able and learned counsel for the respondent insists that the statute now requires that the waiver must be made upon the particular trial under review, to the effect that even though upon a former trial the patient had expressly waived the privilege, he could, maugre such waiver, assert his privilege upon any subsequent trial. The letter of the statute does not require a construction which is opposed to the reason of the rule as laid down in the McKinney case, *supra.* The purpose of the statute is to cover the relation of physician and patient with the cloak of confidence. But the purpose is to save the patient from possible humiliation or distress, not to enable him to win a lawsuit. Now, if the patient once permits the physician to testify, there is no longer any reason at any time for excluding competent testimony under the plea of public policy. If the patient once voluntarily renounce the protection of the statute, his waiver is everlasting and irrevocable. I think, then, that the purpose of the amendments was not to limit the continuous force of a waiver, and thus, to adopt the figure of Ruger, C. J., in the case of *McKinney* v. *Grand. St., etc., Railroad, supra,* to permit the patient to use the statute once as a shield and anon as a sword, but by way of further assurance that the waiver had been formally, clearly and certainly made. * * * In my opinion, the language of the statute does not authorize a construction which affords the privilege notwithstanding that the reason for its con-

tinuance has ceased to exist. It simply means that when the waiver is made, it must be made in open court on a trial of the action. It thus affords a safeguard that the waiver was duly made, but not a shift of 'the waiver once made.''

In *Lissak* v. *Crocker Estate Co., supra,* 'the supreme court of the state, in discussing the doctrine of a waiver of privilege conferred by the code (Code of Civ. Pro., §1881), which provided that ''a licensed physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient,'' said: ''When Doctor Spencer was called, the plaintiff had the right to object to his testifying upon the matters named in this section, or he could consent to his being examined in reference thereto. The privilege given by the statute is personal to the patient, and may be waived by him. It is waived when he calls the physician himself as a witness, or when he permits him to give his testimony without making any objection thereto. If the patient once consents to his testifying, he cannot, after the testimony has been given, revoke the consent and ask to have it excluded. Such consent may be either implied or expressed, and there was in the present instance an implied consent when the plaintiff permitted the witness to be examined in full by the defendant without any objection.''

In *Green* v. *Crapo, supra,* the supreme court of Massachusetts, in discussing the question of the admission in evidence of a privileged communication between attorney and client, said on page 62: ''Of course the appellant's communications with him while he was her counsel were privileged, but they were unimportant and it appeared that the privilege was waived in the probate court. Nevertheless the objection was urged when the case came to be tried before the justice of this court, and an exception was taken when he ruled that the privilege having been waived could not be insisted upon before him. We do not think it necessary to

remark upon the willingness to hold back this testimony. We content ourselves with saying that the ruling was right. The privacy for the sake of which the privilege was created was gone by appellant's own consent, and the privilege does not remain under such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice. *McKinney* v. *Grand St., etc., Railroad* [1887], 104 N. Y. 352, 10 N. E. 544."

The case of *Elliott* v. *City of Kansas City, supra,* was an action against the city to recover damages for personal injuries. On the first and second trials of said cause the city called as a witness the physician of the plaintiff, who testified as to his treatment of the plaintiff, and her physical condition. Plaintiff made no objection to this testimony. On the third trial the city again called said witness, and offered to prove the same facts as on the former trials. The court excluded said evidence on the objection made by plaintiff that "this witness obtained the information asked for while attending and treating her as her physician, and the same was therefore privileged." The court on appeal held that the trial court erred in excluding said evidence. In discussing the question it said on page 607: "Upon this proposition the expressions of the courts having the question in judgment before them are almost uniform that the purpose sought by the prohibition contained in the statute against disclosing professional information, is for the purpose of allowing greater freedom between the physician and patient, and was enacted as a matter of public policy to confer upon persons, seeking the services of a physician, a personal privilege, and closing the door to the sick room and preventing his publishing to the world their infirmities. That this personal privilege may be waived all authorities agree. It is equally well settled, as was said in *Fox* v. *Union Turnpike Co.* [1901], 59 Hun, App. Div., 363, 69 N. Y. Supp. 551, that 'when a patient voluntarily opens the door of the consultation room and gives a view that may have been specially

arranged for the purpose, it would not be in accordance with the spirit of the statute or the interest of the truth to shut the door against a view to be described by a physician.' * * * In our opinion the principle applicable to this proposition, as announced in the New York case (*McKinney* v. *Grand St., etc., Railroad* [1887], 104 N. Y. 352, 10 N. E. 544), is sound, and the reasons assigned for the announcement of a doctrine are equally so. It is insisted by learned counsel for the respondent that this principle is not applicable to the case at bar, for the reason that in the former trials the plaintiff did not introduce the physician, and therefore this rule is inapplicable. It is sufficient to say of that contention that the purpose of the judicial investigation is and should be to ascertain the truth surrounding the transaction to be judicially determined, and we are unable to make any distinction as to the application of the doctrine of waiver, where the patient herself opens the door to the sick room, and where she consents and acquiesces in some one else opening such door. In principle there is no difference. We have in this case Doctor Horrigan testifying at two former trials without any objections on the part of the plaintiffs, his testimony could only have been introduced with her consent and acquiescence and the presumption must be indulged, having made no objections to his testimony in the former trials, and, having testified without any objections, that such testimony was given with her consent and acquiescence. Doctor Horrigan having testified in former trials without any objections, the reason for the enforcement of the rule in respect to the privilege conferred by the statute ceased to exist, and while this court has uniformly granted this personal privilege, when timely invoked, we are unwilling to approve of the action of the trial court where such personal privilege has been so clearly waived in excluding relevant testimony, where such action can in no way tend to carry out the purpose sought to be accomplished by the act conferring such personal privilege.''

There is some conflict in the adjudications on the question here involved, but we think the greater weight of authority and the better reason sustain the rule declared in the authorities herein cited.

Evidence of the intoxication of the appellee at the time of the injury complained of was admissible on the question of contributory negligence (29 Cyc., 534, 620; 7 Am. and Eng. Ency. Law [2d ed.], 441; 7 Ency. Ev., 778, 779; note to *Kingston* v. *Ft. Wayne, etc., R. Co.* [1898], 40 L. R. A. 131, 143-146; *Woods* v. *Board, etc*, [1891], 128 Ind. 289; *McClelland* v. *Louisville, etc., R. Co.* [1884], 94 Ind. 276; *Sharpton* v. *Augusta, etc., R. Co.* [1905], 72 S. C. 162, 172, 173, 51 S. E. 553, 556, and cases cited), and as affecting the weight of his testimony, he having testified in his own behalf concerning said injury. 17 Cyc., 787; 30 Am. and Eng. Ency. Law · (2d ed.), 1096; · *Sharpton* v. *Augusta, etc., R. Co, supra,* and authorities cited; *Joyce* v. *Parkhurst* (1889), 150 Mass. 243, 247, 22 N. E. 899; *Kuenster* v. *Woodhouse* (1898), 101 Wis. 216, 219, 77 N. W. 165; *Morris* v. *State* (1905), (Ala.), 39 South. 608, 611, 612, and authorities cited; · 2 Wigmore, Evidence, §§933, 1005, note 6, page 1164. It is evident that the court erred in excluding said evidence.

It is contended by appellant that the court erred in refusing to give certain instructions requested by it. There was no available error in this, for the reason that the instructions requested do not appear to have been signed by appellant or its counsel when delivered to the court, as the statute requires. §558 Burns 1908, cl. 4, §533 R. S. 1881; §544a Burns 1905, Acts 1903, p. 338, §1; *Terry* v. *Davenport* (1908), 170 Ind. 74; *Hutchinson* v. *Lemcke* (1886), 107 Ind. 121, 137, and cases cited; *Board, etc.,* v. *Legg* (1887), 110 Ind. 479, 486, and cases cited; *Beatty* v. *Brummett* (1884), 94 Ind. 76, 83; *Choen* v. *Porter* (1879), 66 Ind. 194, 201; *Eacock* v. *State* (1907), 169 Ind. 488, 507,

and cases cited; *Musser* v. *State* (1901), 157 Ind. 423, 445, 446, and cases cited.

Appellant complains of certain instructions given to the jury, for the reason that they were under the third paragraph of the complaint which charged a wilful injury when that paragraph had been dismissed by the appellee when the case was pending in the Superior Court of Marion County. True, said paragraph had been dismissed as claimed, but appellant cannot successfully complain of the giving of said instructions on the ground urged, because it also requested the court to give instructions under said third paragraph, thus inviting the error complained of. Elliott, App. Proc., §§626, 627; Ewbank's Manual, §255; *Pennsylvania Co.* v. *Roney* (1883), 89 Ind. 453, 46 Am. Rep. 173; *Indiana, etc., Traction Co.* v. *Jacobs* (1906), 167 Ind. 85, 93.

Contributory negligence may be established in the same manner and by the same kind of evidence as any other fact. The evidence to establish the same, like that to establish negligence on the part of a defendant, may be direct or circumstantial or both, and may be positive or negative in its character, or it may be established by proof of such facts that the inference of contributory negligence may reasonably be drawn therefrom. 29 Cyc., 605, 622, 623, 626. An instruction, therefore, which limits the proof of contributory negligence to any particular kind or character of evidence is objectionable.

Under this rule instruction twenty-nine, given by the court and complained of by appellant as to the kind of proof by which contributory negligence must be shown, was, to say the least, misleading, and therefore erroneous.

The correctness of instruction fifty-four, given by the court, is challenged by the appellant. The court invaded the province of the jury in instructing them in said instruction fifty-four that "the fact, that the plaintiff is deprived of the pleasure and satisfaction in life

that only those have who are possessed of a sound body and the full use of all its members,'' might be considered by them in assessing damages if they found for the appellee. The part of said instruction fifty-four just quoted does not contain a single proposition of law, but only a declaration of what it may be claimed experience and observation have established as true. The teachings of experience on the questions of fact are not however rules of law to be given by the court in its instructions to the jury. The teachings of experience may enter into the arguments of the attorneys on the one side claiming that experience teaches one thing and the other side asserting another conclusion, but the jury, not the court, is the arbiter of such contentions, as of all other questions of fact within the issues. *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 160, 161; *City of Columbus* v. *Strassner* (1894), 138 Ind. 301, 304, 305. As bearing upon the correctness of said instruction in other respects, see *City of Columbus* v. *Strassner* (1890), 124 Ind. 482, 489; *Chicago, etc., R. Co.* v. *Thrasher* (1905), 35 Ind. App. 58, 64, 65.

Complaint is made of certain instructions given by the court which define the respective rights and duties of appellant and appellee at the place where he was injured. The Union Railway Company's tracks at the point where appellee was injured are located on outlots eighty-one and eighty-two in the city of Indianapolis. The facts pleaded in the second paragraph of the complaint, upon which the case was tried, do not show directly nor by necessary legal intendment that the place on said out-lots where appellee was crossing said tracks and where he was injured was a public highway' (*Cannon* v. *Cleveland, etc., R. Co.* [1902], 157 Ind. 682, 685-689), nor that he went upon said premises to transact any business with appellant or the Union Railway Company, nor upon invitation or inducement from either of said companies. The basis of said second paragraph, as we have already said, was the alleged negli-

gence of appellant. *Cannon* v. *Cleveland, etc., R. Co. supra;* *Baltimore, etc., R. Co.* v. *City of Seymour* (1900), 154 Ind. 17; *Brooks* v. *Pittsburgh, etc., R. Co.* (1902), 158 Ind. 62, 68-71; *Indiana R. Co.* v. *Feirick* (1902), 158 Ind. 621, 625, and cases cited; 3 Elliott, Railroads (2d ed.), §1250. Said instructions defining the respective rights and duties of appellant and appellee, when considered in connection with the second paragraph of the complaint, are not in harmony with the rule declared in *Cannon* v. *Cleveland, etc., R. Co., supra,* and for that reason are erroneous. It follows that the court erred in overruling the motion for a new trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.