JOHN CORBETT, Respondent, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, June 2, 1887.

1. EVIDENCE—DECLARATIONS—RES GESTÆ.—In order to make admissible, on the ground that they were part of the *res gestæ*, declarations made contemporaneously with the fact sought to be established, they must have been made concerning some fact pertinent to the issue, and as to which the declarant could have been examined as a witness, and must be in the nature of verbal acts tending to uphold the nature and quality of the facts which they are intended to explain.

2. ——— PRACTICE.—The question being proper, and the answer incompetent, in order to save an exception thereto, the answer must be objected to.

3. ——— PRIVILEGED TESTIMONY—PHYSICIAN.—An attending physician can not testify, against his patient's objection, touching the latter's condition, regardless of whether he derived the information from his patient's statement, or from his own observation.

4. MASTER AND SERVANT—FELLOW-SERVANT—NEGLIGENCE.—A servant who is injured, as a consequence of the negligence of a fellow-servant, is debarred of recovery against the master, although the two servants were not engaged in a common work under one common employment.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Reversed and remanded.*

BENNETT PIKE and HENRY G. HERBEL, for the

appellant: The court erred in admitting illegal and improper evidence offered by the plaintiff, and in excluding legal and proper evidence offered by the defendant. *Railroad v. Huntley*, 38 Mich. 537. The court erred in refusing the instruction, in the nature of a demurrer to the evidence, asked by the defendant at the close of the whole case. *Hoke v. Railroad*, 11 Mo. 579; *Rohback v. Railroad*, 43 Mo. 187; *Whalen v. Railroad*, 8 Ohio St. 249; *Gormley v. Railroad*, 72 Ind. 31; *Collins v. Railroad*, 31 Minn. 31; *Henry v. Railroad*, 81 N. Y. 373; *Campbell v. Railroad*, 24 Am. & Eng. Ry. Cases, 427. The court erred in refusing proper and legal instructions asked by the defendant, and in giving illegal and improper instructions asked by the plaintiff. *McGrath v. Railroad*, 18 Am. & Eng. Ry. Cases, 6; *Railroad v. Wachter*, 60 Md. 395; *Railroad v. McKenzie*, 24 Am. & Eng. Ry. Cases, 405; *Renfro v. Railroad*, 86 Mo. 302; *Hallihan v. Railroad*, 71 Mo. 113; *Clark v. Railroad*, 92 Ill. 43; *Morgan v. Railroad*, 5 Best & S. 570.

A. R. Taylor, for the respondent: The declaration of the witness was immediately after the injury, as soon as Varley could get to him; it was immaterial in itself, but the court was clearly right in admitting it as a part of the *res gestae*. *Brownell v. Railroad*, 47 Mo. 245; *Harriman v. Stowe*, 57 Mo. 96; *Entwhistle v. Feighner*, 60 Mo. 215. The testimony of Dr. Vasterling, as to information gained in his capacity of physician, in order to prescribe for him, was clearly incompetent. *Gartside v. Ins. Co.*, 76 Mo. 446; *Groll v. Tower*, 85 Mo. 255. The persons were not fellow-servants. *Vautrain v. Railroad*, 8 Mo. App. 543; s. c., 78 Mo. 44; *Lewis v. Railroad*, 59 Mo. 495; *Porter v. Railroad*, 71 Mo. 78; *Hall v. Railroad*, 74 Mo. 298.

Rombauer, J., delivered the opinion of the court.

The plaintiff, who was a railroad section hand and track repairer, was engaged in unloading cinders from

one of the defendant's platform cars, which stood upon the railroad track of the defendant. He was standing on the car, facing south, in the performance of this duty, when one of the defendant's trains, coming from the north, and running on the same track on which the train of platform cars was standing, collided with the latter, and, by dint of the collision, threw the plaintiff with violence to the forward end of the car, whereby his head received a severe cut or gash. He brought this action to recover damages for the injury thus sustained, and recovered a verdict for seven hundred and fifty dollars.

The answer contained a general denial, and the plea of contributory negligence, which was traversed by the reply.

The errors assigned upon this appeal are : (1) That the court erred in overruling the defendant's demurrer to the evidence. (2) That it admitted illegal and incompetent testimony for the plaintiff, and excluded proper evidence offered by the defendant. (3) That it gave erroneous instructions to the jury, and refused proper instructions asked by the defendant.

I.  The first assignment rests upon the proposition that there was no evidence tending to show that the employes of the defendant, in charge of the south-bound train, could have stopped their train after they became aware of the platform cars on the track. There was some conflict of evidence upon this subject. One of the plaintiff's witnesses testified that he could see the track north of the cinder train for a quarter of a mile, and it appeared that the south-bound train, running at the speed at which it was running, could have been stopped much short of that distance. If the track was in sight for a quarter of a mile, the men on the approaching train could have seen the cinder cars, if they had kept a proper look-out, in time to stop their train before it collided. On that state of the evidence, the plaintiff was entitled to go to the jury, provided the accident was not the result of the negligence of a fellow-servant.

II. The defendant claims that the court admitted in evidence, against its objection, the following declarations, made by the plaintiff two or three minutes after the accident, to witness Varley, and testified to by the latter: " He told me he was hurt in his hip and in his side, 'and I am afraid,' says he, 'that my skull is broke.'"

We are referred by counsel for the plaintiff to three decisions in this state, under which it is claimed that this evidence was admissible: *Brownell v. Railroad*, (47 Mo. 245); *Harriman v. Stowe* (57 Mo. 96) ; and *Entwhistle v. Feighner* (60 Mo. 215). The first was a dying declaration, made as to the cause of the accident which resulted in the death of the plaintiff's husband, and the matter discussed was whether declarations of the character are ever admissible in a civil case, and it was held that, while not admissible as a dying declaration, it was clearly admissible as a part of the *res gestae*. In *Harriman v. Stowe* (57 Mo. 96), the declaration, though made a short time after the accident, was one relating to the cause of the accident, and the court held it admissible, Wagner, J., saying: " The accident and the declaration formed connecting circumstances, and in the ordinary affairs of life, no one would doubt the truth of these declarations, or hesitate to credit them as evidence." In *Entwhistle v. Feighner* (60 Mo. 215), the court say: " The plaintiff gave evidence of the declarations of the deceased husband, immediately after he received the injury, and they were objected to, but they were clearly admissible, within the principle established in *Brownell v. Railroad*, and *Harriman v. Stowe*, and this is conceded by counsel in his brief." It did not appear in that case what the declarations were, or to what they related ; but it is fairly presumable that they referred to facts in connection with the accident.

Some confusion has arisen in the decisions by a failure to distinguish the various questions in which the admissibility of this class of testimony has arisen ;

courts speaking indiscriminately of declarations against interest, declarations made by agents in course of their agency, declarations on which other persons acted, dying declarations, which are admitted by reason of necessity, and other declarations, cotemporaneous with the transaction, as parts of the *res gestae*.    Many of these declarations are admissible on other principles.    Declarations, to be admissible, solely and simply because they were made at the time when an act transpired, can be admissible only on the principle that they were an oral act, and that, as Wagner, J., says, "they were made under circumstances when, in the ordinary affairs of life, no one would have doubted the truth of these declarations." As Hosmer, Ch. J., says, in *Enos v. Tuttle* (3 Conn. 250): "They must have been made at the time of the act done which they are supposed to characterize, and have been well calculated to uphold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction." It must, further, be evident that the declaration, to be admissible, must be concerning some fact pertinent to the issues, and touching which the declarant might be examined, if a witness, himself; and unless a declaration answers these requirements, it is inadmissible.

Applying these rules to the testimony elicited from the witness, and it is manifest that the declarant's statement, "that he was afraid his skull was broke," was clearly inadmissible, on any theory, and should have been excluded by the court, upon request.    No such request, however, was made.    The question put to the witness, as to what the plaintiff said to him, immediately after the accident, was a proper question, and the objection to it was properly overruled.    For aught that appears, that question was not designed to elicit any irrelevant or incompetent evidence.    If it did elicit some evidence which was both irrelevant and incompetent, the defendant should have moved to exclude the irrelevant

answer, and, having failed to do so, is in no condition to complain.

Upon the examination, on behalf of the defendant, of Dr. Vasterling, who had attended the plaintiff as his physician, while undergoing a treatment for the injuries received, the following questions were put to him: "State to the jury what his hurts were? Why did he leave on the seventh? Did he require any attention longer than that?" The plaintiff objected to these questions, and the court sustained the objections, stating to the defendant's counsel, at the same time, "you may use the doctor as a witness to prove any fact within his knowledge, other than that which came to him peculiarly as a physician."

There was no error in this ruling. The present rule, in this state, on that subject, is clearly stated in *Groll v. Tower* (85 Mo. 255): "Where the evidence of the attending physician is offered by the patient, or his representatives, it is competent and admissible. Where it is offered by the opposite party, the physician can not testify against the objection of the patient or his representatives." In the prior case of *Gartside v. Insurance Company* (76 Mo. 446), the phrase in the statute, "information which may have been acquired from any patient, while attending him in a professional character," was construed to include such information as the physician acquired from his own observation and examination, beyond information acquired from what the patient said.

III. The only question of any difficulty arises upon the action of the court in giving and refusing instructions. The court, upon the plaintiff's request, charged the jury as follows:

"1. The court instructs the jury that if they find, from the evidence in this case, that, prior to, and on, the fifth day of April, 1886, the plaintiff was in the employment of the defendant, as a section hand, and that the duty of the plaintiff, under his employment, was to labor

in the repair and maintenance of the defendant's track ; and if the jury further believe, from the evidence, that, on the fifth day of April, 1886, whilst the plaintiff was engaged in the discharge of his duty, as such laborer, unloading cinders upon the defendant's track from a car, the car on which the plaintiff was at labor unloading cinders was collided with by a train of freight cars, operated by the defendant and its servants, and that the plaintiff was thereby thrown from the car on which he was so laboring, and was thereby injured ; and if the jury further find, from the evidence, that the defendant's servants, in charge of said freight train, did not use ordinary care in so running said freight train into, and colliding with, the cars in which the plaintiff was at work, and the plaintiff, at the time of, and preceding, said collision, was exercising ordinary care upon his part, then the plaintiff is entitled to recover."

"2. If the jury, under the instructions and evidence, find in favor of the plaintiff, they should assess his damages at such sum as the jury may believe, from the evidence, will be a fair compensation to the plaintiff: (1) For any pain of body or mind.  (2) For any loss of earnings.  (3) For any permanent physical disability, apart from pain of body or mind, and any loss of earnings, which the plaintiff has sustained, or may hereafter sustain, by reason of said injury, and directly caused thereby, not exceeding the amount sued for.  The court instructs the jury that the burden of proving that the plaintiff, at the time of, and just preceding, the injury, was not exercising ordinary care, and that such failure to exercise ordinary care, directly contributed to cause the plaintiff's injury, is upon the defendant ; and by 'ordinary care' is meant that degree of care that a person of ordinary prudence would have used under the same circumstances."

In thus charging the jury, the court assumed, as a matter of law, that the *defendant's servants in charge of said freight train,* were not fellow-servants of the plaintiff.

It is the settled law of this state that a party seeking to recover for injuries, caused to him in this class of cases, must state, in his petition, the particular act of negligence which caused the injury. *Current v. Railroad*, 86 Mo. 66, and cases cited. The plaintiff, in his petition, states that the " defendant, by its servants, agents, and employes, ran one of its engines, with great force, into the aforesaid section train," and that he was injured "through the negligence and unskillfulness of the defendant, as aforesaid." The court, in instructing the jury, based the plaintiff's right of recovery, hypothetically, upon this negligence.

The plaintiff contends that the courts of this state have held that a track repairer is not a fellow-servant of the trainmen, and that, therefore, this instruction was correct, and cites in support thereof the cases of *Vautrain v. Railroad* (8 Mo. App. 543); (s. c., 78 Mo. 44); *Lewis v. Railroad* (59 Mo. 495); *Porter v. Railroad* (71 Mo. 78); and *Hall v. Railroad* (74 Mo. 298); but neither of these cases supports the proposition contended for. In the *Vautrain case* the recovery was upheld on the theory of a defective road bed; in the *Lewis case*, on the theory of a defective track; in the *Porter case*, on the theory of a defective track; in the *Hall case*, on the theory of a defective track. All these cases rest upon a wholly different theory, one which we have recently very fully discussed in several cases, namely, that latent defects in machinery and appliances are not a part of the ordinary risks which an employe assumes as an incident to his employment, and the duty of inspection, under such circumstances, devolves upon the master. *Clowers v. Railroad*, 21 Mo. App. 213; *Dutzi v. Geisel*, 23 Mo. App. 676.

Nor can the plaintiff's contention be supported upon the theory that the negligence in this case was that of a vice-principal, who *quoad hoc*, was a representative of the master. That doctrine might be available to the plaintiff if the negligence causing the injury here

were charged or shwon to have been that of the section foreman, or the foreman in charge of the cinder train, under whose immediate orders and supervision the plaintiff acted. The rule as to vice-principal has been greatly extended by recent decisions in this state (*Moore v. Railroad*, 85 Mo. 588; *McDermott v. Railroad*, 87 Mo. 285; *Dowling v. Allen*, 74 Mo. 13; s. c., 88 Mo. 293); but we are not aware that the rule which makes persons, in the common employ of the same master, fellow-servants, regardless of the nature of the work in which they are respectively employed, has ever been changed. Such change, if desirable, should be made by the court of final judicature, and not by trial courts, or courts whose appellate jurisdiction is limited.

In *Farwell v. Railroad* (4 Metc. 49), which has always been considered a leading case on this subject, and which has been extensively followed, both in this country and England for a time; Judge Shaw thus states the principle which, in that class of cases, limits the liability of the master: "When the object to be accomplished is one and the same, when the employers are the same, and the several persons employed derived their authority and their compensation from the same source, it would be extremely difficult to distinguish what constitutes one department, and what a distinct department of duty. The master, in the case supposed, is not exempt from liability because the servant has better means of providing for his safety, when he is employed in immediate connection with those from whose negligence he might suffer, but because the *implied contract* of the master does not extend to indemnify the servant against the negligence of any one but himself, and he is not liable in tort, as for the negligence of his servant, because the person suffering does not stand towards him in the relation of a stranger, but is one whose rights are regulated by contract, express or implied."

In *McDermott v. Railroad* this case is cited with

approval, Judge Napton saying: "There are cases, indeed, decided in this country denying the principle entirely, but they must be regarded as exceptional ones." In the case of *Schultz v. Railroad* (36 Mo. 29), Judge Holmes says that the law "had been so settled in this state by the case of *McDermott v. Railroad*, a well considered decision, which is sustained by numerous and very learned authorities, both in this country and in England." In *Gibson v. Railroad* (46 Mo. 169), the doctrine, thus stated, is again cited with approval by Judge Wagner, and the ground on which it rests is fully explained. The case is cited and the same rule recognized in *Harper v. Railroad* (47 Mo. 567, 576); in *Brothers v. Cartter* (52 Mo. 375); in *Connor v. Railroad* (59 Mo. 295, 301), and in *Elliott v. Railroad* (67 Mo. 274). Recent English cases have limited the rule as applicable only to cases where the servants were in the same common employment, and engaged in the same common work under the same common employment. *McNaughton v. Railroad*, 19 Court of Sess. 271; *Wilson v. Merry*, L. R. 1 H. L. 326. And the same limitation was approved by the supreme court of the United States in *Railroad v. Ross* (112 U. S. 388, 389), by an almost equally divided court; Justices Bradley, Matthews, Gray, and Blatchford, dissenting. The authority of the last case, however, is still further weakened by the fact that the majority of the court inclined to rest its decision on the mere fact that the two servants were not in the same common employment, but placed its ruling distinctly on the other principle, namely, that the conductor was in charge of the train, and as to persons employed in subordinate capacities on the train, not their fellow servant, but the representative of the company.

In this state of the law the court erred in assuming, in its instructions, as a matter of law, that the defendant's servants in charge of the train were not fellow-servants of the plaintiff, and for such error its judgment

must be reversed and the cause remanded. It is so ordered. Judge Thompson concurs; Judge Lewis is absent.