NELLIE DENNY, Appellant, v. DR. RAYMOND E. ROBERTSON.—No. 38455.—179 S. W. (2d) 5.

Division One, March 6, 1944.

Rehearing Denied, April 3, 1944.

610

*E. L. Rush, N. Murry Edwards* and *Douglas H. Jones* for appellant.

*David A. McMullan* and *James, E. Garstang* for respondent; *Carter, Bull & Garstang* of counsel.

612

 GANTT, J.—Action under the statute (Secs. 3652, 3653, 3654, R. S. 1939) to recover $10,000 for the death of Charles E. Denny, husband of the plaintiff. Judgment was entered on a verdict for the defendant and plaintiff appealed. The petition is conventional and the answer a general denial.

For six years prior to his death Denny had heart and kidney afflictions. On Jan. 9, 1941, he visited the office of the defendant dentist for treatment. The defendant took an X-ray of the jaw. He was not satisfied and directed Denny to return the next day. On Denny's return, the defendant took another X-ray of the jaw, which indicated an "impacted tooth". On administering a local anesthetic, the defendant attempted an extraction of the tooth. In doing so, he heard a cracking sound, which indicated that the jawbone had been fractured. Thereupon he discontinued the attempt and referred

Denny to Dr. Ralph B. Rode, a dental surgeon who specializes in the extraction of teeth. On the same day (Jan. 10, ▮ 1941) Denny went to Dr. Rode's office where X-rays showed a fracture of the jawbone. The doctor sent him to St. Anthony's Hospital and called Dr. Frank J. Tainter, a physician, to assist in the case. On said day Drs. Rode, Tainter and Bardenheier, Denny's family physician, attended him at the hospital. At that time there was not much swelling of the jaw. Later and on Jan. 14, 1941, Drs. Rode and Tainter set the jawbone, at which time his general condition was improved. In twelve days he left the hospital. On Jan. 20, 1941, he visited Dr. Rode and Dr. Tainter at their offices, and thereafter visited them at the offices every two or three days until Feb. 20, 1941. On Feb. 21, 1941, Denny went to Dr. Rode's office, who, assisted by Dr. Tainter, examined the jawbone and found it firm as before the fracture. Thereupon Dr. Rode extracted the tooth under a local anesthetic. Dr. Tainter did not see Denny after the extraction of the tooth. On April 17, 1941, Denny returned to St. Anthony's Hospital as directed by his family physician, Dr. Phil J. Bardenheier, who visited him at the hospital twice a day for three weeks. Denny was taken to his home May 7, 1941, where he remained for three weeks. He was then taken to the Maplewood Nursing Home, where he remained under the care of his family physician until he died June 1, 1941.

Plaintiff contends the death of her husband was caused by the fracture. Defendant contends it was caused by the afflictions above mentioned. At the trial Drs. Rode and Bardenheier testified for the plaintiff, and Dr. Tainter testified for the defendant.

▮ Plaintiff assigns error on the ruling of the court permitting Dr. Tainter to testify as a witness. She contends that he is prohibited by Sec. 1895, R. S. 1939, from testifying to information acquired in his treatment of Denny as a patient and that the provisions of said section cannot be waived by the beneficiaries under the "wrongful death" statute after the death of the patient. We ruled in Thompson v. Ish, 99 Mo. 160, 176, 12 S. W. 510, and in other cases as follows:

"Notwithstanding our statute provides for no exception, still it deals with a privilege, and it must be taken as established law that the privilege may be waived by the patient; and we have held that it may be waived by the representative, and, in this, our ruling accords with that of the supreme court of Michigan under a like statute. If the patient may waive this right or privilege for the purpose of protecting his rights in a litigated cause, we see no substantial reason why it may not be done by those who represent him after his death, for the purpose of protecting rights acquired under him."

Plaintiff argues that under the rulings of this court (State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51, and Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920) the

"wrongful death" statute created a new cause of action and for that reason in actions under said statute there could be no representative of the deceased husband. Of course, by the enactment of said statute, the legislature intended for the beneficiaries under the statute to recover in a proper case. In many of the cases under said statute, the beneficiaries could not recover, absent the testimony of the attending physician. For instance, in the instant case, if the plaintiff did not represent the deceased husband under the "privileged communications" statute (Sec. 1895, R. S. 1939), the trial court would have been compelled to sustain an objection by the defendant to the testimony of the family physician, Dr. Bardenheier. Absent said testimony, the plaintiff could not have made a case for the jury. We have ruled that the statute created a new cause of action. Even so, it is a right acquired under the deceased, and the beneficiaries under the statute represent him in seeking recovery for his death.

■ Furthermore, in Bouligny v. Metropolitan Life Ins. Co., 160 S. W. 2d 474, 475, it is ruled as follows:

"It is also the generally accepted rule that where several physicians have attended a patient at or about the same time and the patient calls one of them to testify as to what was then learned about his condition he cannot object to the testimony of the others as to the same matter."

Thus it appears that the plaintiff, by using the family physician as a witness, waived the privilege under Sec. 1895, R. S. 1939, and thereby authorized the defendant to use Dr. Tainter, the consulting physician, as a witness.

■ Furthermore, the above considered question was not presented to the trial court. The plaintiff objected to Dr. Tainter testifying in words as follows: "Just a minute. The privilege has not been waived. We ■ claim that privilege and object to him testifying."

In other words, the case was tried on the theory that the privilege could be waived by the plaintiff, as the representative of the deceased husband. Of course, the trial court overruled the objection to the testimony of Dr. Tainter on the theory that the plaintiff waived the privilege by using the family physician, Dr. Bardenheier, as a witness.

■ Error also is assigned on the ruling of the court prohibiting plaintiff from showing that a judgment for damages had been rendered against Dr. Tainter in a malpractice case and that he had altered the hospital record in said case.

On cross-examination plaintiff asked the doctor if he was familiar with the "privileged communication rule between doctor and patient." She also asked if he informed the plaintiff and her lawyers that he had been subpoenaed by the defendant as a witness in this case. The court sustained the objection to both questions. In doing so the court ruled correctly. The statute is for the benefit of the

patient and representative, and the doctor was under no duty to inform plaintiff and her attorneys that he had been subpoenaed by the defendant. He denied that he had changed the hospital record in another case. At this point the defendant objected to the cross-examination of the doctor with reference to another case. Plaintiff argues that she was "entitled to show the doctor's interest." The court sustained the objection. Plaintiff made no offer to prove facts tending to discredit the doctor as a witness or tending to show that he was an interested witness. For this and other reasons, the contention is overruled. [Byam v. Public Service Co., 328 Mo. 813, 826, 41 S. W. 2d 945.]

■ Plaintiff also assigns error on the ruling of the court prohibiting her from showing that the deceased husband was insurable and had been insured during a late period.

Plaintiff, while a witness, offered in evidence the American Experience Tables of Mortality to show the expectancy of plaintiff and the deceased husband. Defendant objected for the reason said tables are based upon persons in good health, whereas the evidence in this case shows that the deceased husband had an absolutely incurable disease and was not in good health. The objection was overruled and the tables were admitted in evidence.

Plaintiff was then asked if the deceased husband had taken out life insurance in the last five years of his life. The court sustained the objection to the question. Thereupon plaintiff's attorney offered to prove that "about a year after Mr. and Mrs. Denny were married, Mr. Denny took out $5000 life insurance; that a policy was issued on application and examination, and that the policy was paid Mrs. Denny as beneficiary after his death."

She argues that "where one party opens a field of inquiry, the other party should be allowed to explain it fully". In this connection she states that "defendant's counsel many times suggested and stated to the jury that the annuity tables offered in evidence did not apply to Denny, because they are based only on persons insurable within five years, whereas Denny had been merely waiting to die for fifteen or twenty years."

We find no such statement of the defendant in the record. Furthermore the record does not show that the defendant at the trial of the case opened such a field of inquiry.

Furthermore, in the proof of death made by the family physician, it is stated that deceased husband had been afflicted with chronic ailments for six years prior to his death.

■ Plaintiff assigns error on instructions as follows:

"You are instructed that even though you find and believe from the evidence that the mandible or jawbone of Charles E. Denny was fractured during the treatment and extraction of the tooth of the said Charles E. Denny mentioned in the evidence, and even though you

616

find and believe that defendant was negligent in said treatment and fracture, you cannot find in favor of the plaintiff unless you further find and believe from the preponderance or the greater weight of the credible evidence that the death of the said Charles E. Denny was caused by said treatment and fracture or that the treatment and fracture directly contributed to cause the death of said Charles E. Denny.''

''You are instructed that if you find and believe from the preponderance or greater weight of the evidence that the death of Charles E. Denny was caused by cardiac dilatation and chronic myocarditis or heart trouble or chronic nephritis, and that the fracture of the mandible or jawbone of said Charles E. Denny was not the cause of the death or did not directly contribute to cause the death of the said Charles E. Denny, then your verdict must be in favor of the defendant.''

She contends that the instructions are ''sole cause instructions'', but favors us with no reason for the classification. She also contends that the instructions unnecessarily directed attention to the deceased husband's chronic ailments and thereby caused the jury to believe that unless said ailments ''had nothing to do with his death and that the fracture of his jawbone was the sole and only cause'' of death, the plaintiff could not recover. On the contrary, the instructions directed the jury that if the fracture contributed to cause the death, the plaintiff was entitled to recover.

The judgment is affirmed. All concur.