**STATE ex rel. Ival D. McNUTT and Springfield Ambulance Service of Springfield, Missouri, Inc., Relators,**

v.

**Honorable James H. KEET, Judge of the Circuit Court of Greene County, Missouri, Division No. 3, Respondent.**

**No. 53624.**

Supreme Court of Missouri.
En Banc.

Oct. 14, 1968.

Daniel, Clampett, Ellis, Rittershouse & Dalton, W. Raẏ Daniel, B. H. Clampett, Springfield, for relators.

Miller, Fairman, Sanford, Carr & Lowther, Gerald H. Lowther, Henry W. Westbrooke, Jr., Thomas M. Campbell, Springfield, for respondent.

SEILER, Judge.

This is an original proceeding in mandamus instituted here. The determinative question is, once issue has been joined in a personal injury damage suit as to the extent of plaintiff's injuries, can the defendant obtain for discovery purposes, medical and hospital records, over plaintiff's objection of privilege under § 491.-060(5), V.A.M.S.?

Plaintiffs in the damage suit from which this action in mandamus ensues, were involved in an automobile accident with relators February 5, 1966. Plaintiffs filed suit for damages, Mrs. Renie for $45,000 for her injuries and Mr. Renie for $15,000 for loss of services of his wife. In her petition Mrs. Renie alleged personal injuries "consisting of contusions, sprains, bruises, lacerations, and abrasions upon and to said plaintiff's head, face, chin, neck, shoulders, arms, wrists, hands, back, spine, chest, hips, knees, legs, ankles and feet, and internal organs". She alleged "[g]revious shock to said plaintiff's entire nervous system, including the nerves and nerve cen-

ters throughout her person, caused them to become diseased and all the functions thereof impaired, and aggravating her previously existing nervous condition, and caused plaintiff to suffer from nervous tremors and acute depression." Finally she alleged "hypotrophic changes in her spine and an aggravation of preexisting arthritis and neuritis." By their answer in the damage suit, relators denied these allegations.

In due course relators served interrogatories. Interrogatories 13 and 15 and the answers thereto are as follows:

"13. List the name and last known address of each and every physician, doctor, osteopath, surgeon or chiropractor who has seen you professionally to treat or examine you in the five-year period prior to the date of accident described in the petition, including examinations for purposes of obtaining life insurance, giving the approximate date of each such examination or treatment, and the nature, cause or purpose of each such examination or treatment."

Answer: "I was under the care of Dr. Stanley S. Peterson for five years prior to the accident. I do not have records of specific visits which I have made to him during that time or of consultants he has called in from their Clinic. The only doctor visit I can recall making outside of the Clinic during that time was a consultation with Dr. McAlhany, probably in the summer of 1965."

"15. State whether you have had any surgical operations or any serious illness, sickness or disease either prior or subsequent to the accident referred to in your petition? If so, state: (a) the date and place; (b) a description of such operations, illnesses, sicknesses or diseases; (c) the names and addresses of all doctors rendering treatment therefor; (d) the names and addresses of any hospitals where you were treated; (e) if you did not recover fully, the date your condition became stationary and a description of your condition at this time."

Answer: "I have had no surgical operations since the accident. I have had serious illnesses as a result of accident and they have been constant since the accident, and circulatory problems. Appendectomy in 1947, Springfield Baptist Hospital, Dr. Durward Hall, recovered. 1951 through 1959, surgery three times involving hemmorrhoids and rectal repairs. Drs. Hall, Ashley, or Elkins, recoveries, Springfield Baptist Hospital or St. John's Hospital. January 1957, Bronchitis, Springfield Baptist Hospital, Dr. Peterson, recovered. December 1959, poor protoplasm, disease of the connective tissues, Springfield Baptist Hospital, Dr. Peterson. February to March 1960, recurrence of above, Springfield Baptist Hospital, Dr. Peterson, condition eventually stabilized. December 19, 1966, through February 11, 1967, Springfield Baptist Hospital, general systemic health deteriorated steadily from the time of the accident until I entered the hospital in December, Dr. Stanley S. Peterson, with Dr. George Wong and Dr. Daniel Yancey called in for consultations."

Thereafter, pursuant to an order of the court obtained in the damage suit by the relators, Mrs. Renie submitted to a physical examination by a Springfield doctor, whose report was as follows:

"After taking a careful and detailed history and performing a physical examination and routine laboratory work on Mrs. Jeannette Renie, at your request, I am quite unable to come to a conclusion regarding what her longstanding disease can be. She is unable to quote a diagnosis from her doctors and her symptoms and course have been puzzling and rather bizarre. With the nature of her underlying illness consequently being most obscure, I cannot give a well-grounded opinion as to whether her condition has indeed been aggravated by the accident of February, 1966; perhaps the natural history of the disease would have caused her to have her symptoms, accident or not.

"It will be essential for me to have access to her hospital records in order to under-

stand her case better. Without such, I certainly will be hampered in stating an intelligent opinion."

Next the relators moved for production of the medical records, asking for access to:

"Any and all medical records, including X-rays, pertaining to any and all examinations and treatment of plaintiff Jeannette Renie at any time by Dr. Stanley S. Peterson or by any other member of the Smith-Glynn-Callaway Clinic, in the possession of the said Smith-Glynn-Callaway Clinic, Springfield Baptist Hospital, and St. John's Hospital."

The trial court announced its intention of overruling the motion, whereupon relators filed the present action for writ of mandamus commanding respondent to sustain the motion to produce. The petition for the writ in addition to the matters set forth above alleges plaintiff is claiming aggravation of preexisting arthritis, neuritis, nervousness, joint pain and connective tissue disease. It alleges that the preexisting conditions for which damages are sought are or could be such that, as stated by the examiner, "perhaps the natural history of the disease would have caused her to have her symptoms, accident or not;" that without access to the medical records in question the examiner could not render an opinion; that without access to the records sufficiently far in advance of trial to permit "the orderly use thereof", relators may be prejudiced not only by the examiner's inability to express an opinion, but also by the close relationship between the preexisting conditions not due to the accident and the aggravation thereof allegedly due to the accident, thereby incurring the hazard that the jury "could be misled into awarding damages for the total pain and disability accruing from both", and that they have no access to the medical records other than by production through the present discovery procedure.

In his return, respondent does not dispute the matters of fact alleged but contends that the records are shielded from discovery by the medical privilege accorded by § 491.060(5) and preserved in Rule 58.01, V.A.M.R., and also states that the medical records are not in the possession or control of the plaintiffs and are not discoverable for that reason.

If § 491.060(5) were applied literally, no attending physician could testify for the plaintiff in any personal injury suit because the statute, without qualification, states such a witness is incompetent to testify. Early in its history it was actually so applied. In Harriman v. Stowe, 57 Mo. 93, decided in 1874, the trial court sustained the objection of the *defendant* to the testimony of the attending physician for the injured plaintiff as to any information received by the doctor while attending plaintiff in his professional character necessary to enable him to prescribe for the patient. On appeal the court did not dispute this view of the trial court, but found that the testimony given by the doctor, which included testimony as to what the injuries were, was admissible as part of the res gestae.

It was not long, however, before the court took the view that the privilege could be waived by the patient. The statute was held to be for the benefit of the patient and the right could be waived by him. The first case so holding seems to be Groll v. Tower, 85 Mo. 249, decided in 1884, and such has been the rule ever since. Over fifty years ago in Epstein v. Pennsylvania R. Co., 250 Mo. 1, 156 S.W. 699, 705, 48 L.R.A., N.S., 394, we said: "* * * We have, as has every civilized court where the statute exists, already ingrafted by construction waivers upon it, which are now so well settled as not to admit of question or quibble * * *"[1]

---

1. The privilege itself, which did not exist at common law and which has been enacted by statutes in about two-thirds of the states, has been questioned, particular-

Various acts have been held by the Missouri courts to amount to a waiver: plaintiff's own testimony about the condition, the treatment and what the doctors advised, or calling one of his doctors to testify in his behalf, Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 33 A.L.R.2d 1431; Denny v. Robertson, 352 Mo. 609, 179 S.W.2d 5; Demonbrun v. McHaffie, 348 Mo. 1120, 156 S.W.2d 923; Wells v. City of Jefferson, 345 Mo. 239, 132 S.W.2d 1006, 1010; State v. Long, 257 Mo. 199, 165 S.W. 748; Epstein v. Pennsylvania R. Co., supra; concurring opinion of Lamm, J., in Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 722, 14 L.R.A.,N.S., 565; Foerstel v. St. Louis Pub. Serv. Co. (Mo.App.) 241 S.W.2d 792; by a waiver at a former trial, Elliott v. Kansas City, 198 Mo. 593, 96 S.W. 1023, 6 L.R.A.,N.S., 1082; Ryan v. Metropolitan Life Ins. Co. (Mo.App.) 30 S.W.2d 190. In malpractice cases, the privilege is not permitted to keep the defendant doctor from testifying in his defense, Cramer v. Hurt, 154 Mo. 112, 55 S.W. 258. In a criminal case, where the defendant puts his sanity in issue, he thereby is held to waive the privilege, State v. Swinburne (Mo.Sup. banc) 324 S.W.2d 746; State v. Cochran, banc, 356 Mo. 778, 203 S.W.2d 707, 71; and State v. Sapp, 356 Mo. 705, 203 S.W.2d 425, 429.

In the case before us, plaintiff's injuries alleged in her amended petition are denied by defendants in their answer, so this becomes one of the disputed issues. It is, therefore, evident that plaintiff cannot successfully prosecute her action for damages without waiving the privilege. Sooner or later she must take the stand herself and tell about her injuries and about going to her doctors. Inevitably she must call her doctors to the stand to testify about her injuries and treatment if she expects to recover anything. Her conduct in maintaining the action, it having become apparent that her claim of injuries and aggravation of previously existing conditions is to be among the subjects of dispute, shows that she intends and is willing to abandon the privilege.

■■ It thus becomes largely a matter of timing as to when the waiver, inevitably to occur, is to be recognized, "* * * on the very issues [plaintiff] has originated and would submit to judicial inquiry * *", State ex rel. Williams v. Vardeman (Mo. App.) 422 S.W.2d 400, 408. If delayed until the trial is in process, then what happens is that the plaintiff either prevents the defendant from thereafter as a practical matter making effective use of the information available after waiver, while fully utilizing it for her own purposes, thus permitting plaintiff to use the privilege both as "a shield and a dagger at one and the same time" (which we do not believe the legislature intended), or it is made necessary for the trial court to disrupt the trial by granting defendant a continuance to assemble the now available information, or to declare a mistrial. It would be an empty ceremony to proceed with a trial leading to the above alternatives merely to protect temporarily a privilege which will be waived as soon as plaintiff undertakes to prove her allegations of damages. We therefore hold that once the matter of plaintiff's physical condition is in issue under the pleadings, plaintiff will be considered to have waived the privilege under § 491.060(5) so far as information from doctors or medical and hospital records bearing on that issue is concerned.[2] In so far as Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481; Smart v. Kansas City, 208 Mo. 162, 105 S.W. 709, 14 L.R.A.,

---

ly by writers in the field of evidence, see Wigmore on Evidence, Vol. 8 (McNaughton rev. 1961) § 2380a and McCormick on Evidence, § 108.

**2.** For other cases to the same effect, see Mathis v. Hilderbrand (Alaska 1966) 416

P.2d 8; Mariner v. Great Lakes Dredge and Dock Co. (D.C.N.D.Ohio, E.D.) 202 F.Supp. 430; and Awtry v. United States (D.C.S.D.N.Y.) 27 F.R.D. 399.

N.S., 565; and Foman v. Liberty Life Ins. Co., 227 Mo.App. 70, 51 S.W.2d 212 hold otherwise, they are overruled.

A waiver at the point here announced will have no more effect on the relationship sought to be protected under the statute than would a waiver occurring after the trial has started. Our holding today, in the words of Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, " * * * simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise * * *" This will help in reaching the ultimate object of every trial, which is to get at the truth, and we are unable to see how the interests of justice are served by permitting the plaintiffs to stand on the privilege before trial and then abandon it at trial.

Since we have ruled these records discoverable, if authority from the plaintiffs is required by the records custodian, then the plaintiffs, who have control of this aspect of the situation, should be required by order of respondent, if necessary, to execute the necessary authority to the records custodian to make said records available to the relators.

Nothing we say herein deprives the trial court of its authority to issue protective orders under Rule 57.01(c), upon proper showing, limiting the production of such records to those which reasonably relate to the injuries and aggravations claimed by the plaintiffs in the present suit. The waiver which we today recognize does not mean that it automatically extends to every doctor or hospital record a party has had from birth regardless of the bearing or lack of bearing, as may be, on the matters in issue.

Our alternative writ is therefore made final and peremptory, with directions to sustain the motion to produce.

All concur.